No. 88-72

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

LITTLE HORN STATE BANK,

       Plaintiff and Appellant,

-vs-

THOMAS J. MILL and SHARON MILL,

       Defendants and Respondents.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
             In and for the County of Big Horn,
             The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bert W. Kronmiller and James E. Torske, Hardin,
        Montana

    For Respondent:

        Moulton, Bellingham, Longo & Mather; Ward Swanser,
        Billings, Montana

---

Submitted on Briefs:  June 22, 1988

Decided:  August 23, 1988

Filed:  AUG 2 3 1988

_____
              Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiff Little Horn State Bank appeals the September 8, 1987, bench judgment of the Thirteenth Judicial District Court, Big Horn County. After trial, the court dismissed the Bank's action on its merits. The court concluded that defendants Thomas and Sharon Mill had a superior claim to the heating system and exhaust fan which the Mills removed from a building mortgaged by a third party to the Bank. We affirm.

The players in the proceedings that gave rise to this case are appellant, Little Horn State Bank (Bank), respondents, Thomas J. Mill and Sharon Mill (Mills), Gary C. Davis and Patricia C. Davis (Davises) and Ruf Cut, Inc., a corporation (Ruf Cut), in which Mills were the sole shareholders.

Facts relevant to this case reveal that on April 28, 1980, Mills gave to Bank a real estate mortgage on property in Big Horn County, described in Certificate of Survey 293, to secure a loan of $81,516 for the purpose of enabling Mills to construct a building thereon to be used as a roller skating facility.

On July 7, 1980, Thomas J. Mill gave the Bank a security agreement, evidenced by a financing statement, to secure a loan of $30,000 for the purpose of enabling Mills to acquire personal property to be used in the roller skating facility. The security agreement covered personal property, including the Co-Ray Vac heating system and exhaust fan installed in the building located on the real property described in Certificate of Survey 293. The heating system was installed by hanging it to the ceiling of the building by a series of "J" hooks and suspended by wires. The exhaust fan was put in place by four lag screws. On December 31, 1981, Mills paid off the $30,000 loan.

2

Sometime prior to April 13, 1984, the Mills were experiencing financial difficulty in meeting their obligations under the April 28, 1980, mortgage and were seeking a buyer for the roller skating facility. The Bank agreed to finance the Davises as buyers.

On April 13, 1984, the following events occurred and were concluded in the office of a Hardin attorney, who drafted the relevant documents as attorney for the Bank and the Mills. The record does not disclose if the Davises were represented by an attorney. These documents were all filed or recorded in Big Horn County in the following sequence:

1. A financing statement, Davises as debtors and Mills as secured parties, listing personal property, including the heating system and exhaust fan.

2. Deed to the real property described in Certificate of Survey 293 (the roller skating building), Mills as grantors and Davises as grantees.

3. Satisfaction of Mills/Bank mortgage of April 28, 1980.

4. Termination of financing statement dated July 7, 1980, Thomas J. Mill to the Bank, which had been paid off December 31, 1981.

5. Real estate mortgage dated April 13, 1984, mortgaging the property described in Certificate of Survey 293 (the roller skating building) in the amount of $101,911.05, Davises as mortgagors and the Bank as mortgagee.

On the same date, April 13, 1984, the Davises and Mills entered into two agreements:

1. Document entitled "contract for deed," Ruf Cut as seller (the corporation in which Mills are sole stockholders) and Davises as buyers. In this document Mills agreed to sell and buyers agreed to buy for $25,000, with $8,000 as a down payment and the balance of $17,000 plus interest to be paid

3

no later than April 13, 1986, real property adjacent to the real property described in Certificate of Survey 293 (the roller skating building but separate therefrom) and personal property used by Mills in the roller skating rink enterprise. The "contract for deed" referenced personal property described in a schedule attached thereto; no schedule was attached to the copy introduced in evidence at the trial. However, in the financing statement dated April 13, 1984, a detailed specific list of personal property was contained, and we construe this document and the "contract for deed" together.

2. Financing statement filed April 13, 1984, in Big Horn County, Mills the secured parties and Davises debtors. This document contains a detailed list of personal property sold by Mills to Davises relating to the roller skating business and specifically includes the said heating system and exhaust fan. The place of filing is not an issue in this case.

The "contract for deed" of April 13, 1984, provided that sale documents, including a deed to the real property and a bill of sale for the personal property, were to be held in escrow at the office of the Hardin attorney who had drafted them and that in the event Davises failed to pay the purchase price, the deed and bill of sale were to be redelivered to Mills as sellers.

The "contract for deed" further provided that in the event of Davises' default, after notice, Mills had the right to terminate the contract and Davises were to return possession of the real and personal property to Mills and Davises as buyers would have no further interest therein.

Davises defaulted, notice was given, and on May 14, 1986, Davises delivered possession of the real and personal property under the "contract for deed" to Mills.

4

On July 7, 1986, Davises and the Bank entered into an agreement and release whereby Davises agreed to deed and did deed the real property described in Certificate of Survey 293 (the roller skating building and land where it is situate) in consideration of the Bank satisfying the mortgage debt, then amounting to $103,256.81.

In May 1986 Mills offered to sell the heating system and exhaust fan to the Bank. The Bank declined the offer and advised Mills that the Bank claims the property as fixtures pursuant to its mortgage of April 13, 1984, given to them by Davises. Mills took possession of the heating system and exhaust fan, removing them from the roller skating facility, and the Bank sued.

We state the determinative issue in this case to be: Did the District Court err in concluding that the claim of the Bank under its mortgage of April 13, 1984, to the heating system and fan as fixtures in the mortgaged premises was inferior and subject to the right of Mills in this property?

The answer to this issue is dependent upon who owned the personal property in dispute at the time Davises gave their mortgage of April 13, 1984, to the Bank.

The District Court findings of fact and conclusions of law, in their essential part, concluded that Mills were at all times the owners of the personal property and never transferred ownership to Davises. The District Court concluded that the Bank obtained no more interest in the personal property than the interest held by Davises. We agree and affirm the District Court's judgment for the respondents.

The record discloses that the Bank, at the time it loaned Mills the money to acquire the disputed personal property, secured the loan by a security agreement further evidenced by a financing statement. When Mills paid this

5

loan, they were the owners of the personal property, unencumbered.

The undisputed testimony of Thomas J. Mill is that the Mills and the Davises intended the disputed personal property to remain as such and that it was not intended to be a fixture in the building purchased by the Davises from Mills. This testimony is further supported by the "contract for deed" and financing statement executed by Mills and Davises wherein the personal property is bargained for and sold separate from the roller skating building and real property deeded to Davises and upon which the Bank's mortgage was taken.

The interest that Davises may have had to the disputed personal property on April 13, 1984, and which may have been mortgaged to the Bank was that derived from a contract for deed. Before such interest could ripen into an interest the Bank may claim under its mortgage to be superior to the interest of Mills, an essential condition precedent had to occur--Davises would have had to complete payment to Mills under the terms of their purchase contract. They failed to do so, and with this failure, any claim of the Bank as superior to Mills also fails.

Our holding on this issue resolves this case, and it is unnecessary to discuss any other issues raised by appellant.

Affirmed.

J. A. Turnage
Chief Justice

6

We concur:

_John Conway Harrison_

_[signature]_

_R. C. McDonough_

_William E. Hunt Sr._

Justices